**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **ELIZABETH HEMBLING, PATRICIA KULESA, and STEWARD CONNARD,** | NO._____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| **VIRIDIAN ENERGY, LLC, CRIUS ENERGY TRUST, MICHAEL J. FALLQUIST and ROBERT A. McFADDEN,** | **JURY TRIAL DEMANDED** |
| Defendants. | |

## <u>INTRODUCTION</u>

Plaintiffs Elizabeth Hembling, Patricia Kulesa, and Steward Connard (collectively, "Plaintiffs") file this Complaint on behalf of themselves and all others similarly situated, by and through their undersigned attorneys, against Defendant Viridian Energy, LLC and Crius Energy Trust (collectively, "Viridian" or the "Company"), as well as against Defendants Michael J. Fallquist and Robert A. McFadden (the "Individual Defendants" and, collectively with Viridian, "Defendants"), two individuals who, at all relevant times, controlled Viridian and its means of doing business with the public.

Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief based upon, among other things, the investigation conducted by their attorneys, including interviews with former

1

customers and sales representatives of Viridian and review of documents provided by such persons.

## NATURE OF THE CASE

1.      Plaintiffs bring this class action individually and on behalf of the Class defined below against Viridian and the individual defendants to obtain relief, including, among other things, damages and declaratory relief.[1] Plaintiffs seek redress for Viridian's fraudulent marketing practices, as well as the Company's systematic breaches of its consumer contracts, concerning its variable rate energy plans throughout the nation.

2.      Viridian's strategy for accruing customers is grounded in fraud. Viridian falsely promises potential customers that they will save a substantial amount of money by switching from their local utilities to Viridian.

3.      The Company sells electric power and gas to consumers. Viridian sells its energy through its network of Independent Viridian Associates ("IVAs"), who work on a commission basis.[2] Viridian provides these IVAs with standardized marketing scripts and materials, to ensure that they aggressively market Viridian to potential customers.

4.      As part of its training of its IVAs, Viridian informs them of their responsibilities in selling energy to Viridian customers. *See, e.g.,* "Your Responsibilities," "Viridian's Responsibilities" and "Feel Great About Your Product" attached hereto as Exhibits 1, 2, and 3.

---

[1] Upon information and belief, the Attorneys General of several states, including New Jersey, are investigating the Company's sales practices. Any relief obtained by Attorneys General may overlap with the relief Plaintiffs seek through this litigation.

[2] Viridian markets exclusively through a multi-tiered network marketing approach, offering an opportunity for its IVAs to earn income by offering the Company's energy supply services to friends, family and other ultimate consumers, on a commission plus bonus basis. Many of such IVA's have, in turn, recruited other IVA's and share in a portion of their commissions. Collectively, these IVAs form a retail pyramid.

The Company does not instruct its IVAs to inform prospective customers that, to the extent they receive any savings on their utility bills, these savings will be short-lived.  Nor does it instruct its IVAs to inform customers that the overall cost of purchasing energy from Viridian will exceed the prices charged by regulated utilities to the public.

5.     In order to induce consumers to switch to Viridian's gas or electric energy, the Company, directly and through its various levels of IVAs, represents to potential customers that, if they switch to Viridian as a supplier in place of their local utilities, they will receive highly favorable, "bulk purchase" rates on their energy bills, followed by competitive market-based rates and savings thereafter.[3]

6.     The Company starts its standardized sales pitch with an opening invitation such as set forth in Exhibit 4 attached hereto: **"Ask us how to $AVE MONEY ON your ELECTRIC BILL."** The Viridian sales script also instructs IVAs to falsely and deceptively tell customers there is a **"guaranteed savings built in regardless of the direction in which the wholesale price moves."** *See* "Viridian uses variable pricing," attached hereto as Exhibit 5. Viridian makes these purportedly discounted rates appear especially attractive by falsely promising prospective

---

[3] At various times, Viridian has informed prospective customers that they would receive timely mailed notice in advance of price increases. In fact, when Viridian sent such notices, it typically did so immediately before, or even after, it raised its prices without providing its customers with sufficient time to avoid the increases. It then would refuse to promptly switch customers back to their pre-Viridian utilities. When customers complained, they were typically not provided with timely refunds—or indeed, with any refunds whatsoever. Additionally, without advance notice to customers, Viridian would unilaterally switch them from fixed rate to variable rate pricing or vice-versa, depending upon which rate plan was more beneficial to Viridian, regardless of the impact on customers. Defendants have historically made it extremely difficult for customers to call the Company, and even when customers were able to get to a live person on the phone, these persons were typically rude, uninformed, and, according to them, did not have access to the data. They also frequently maintained that Viridian's computers were down. Upon information and belief, the behavior of the customer sales force was part of a larger scheme developed by Defendants to force customers to remain with Viridian.

customers that they would be able to cancel their contracts with the Company quickly and easily. In fact, Viridian makes cancelling its services exceedingly difficult.[4]

7.      These standardized representations are an integral part of the Company's misleading and deceptive bait-and-switch scheme; as discussed below, once prospects were hooked on "teaser" rates, Viridian's rates increased dramatically, typically substantially in excess of the rates charged directly by local utilities.

8.      In order to carry out its scheme, Viridian provides its IVAs with a highly standardized series of scripts and selling tools to ensure that the same inducements are provided to all prospective customers. *See, e.g.,* "An Alternative Energy/Electricity Supplier" and "Success Guide for Customer Acquisition," attached hereto as Exhibits 6 and 7. Upon information and belief, these selling scripts are substantively the same throughout Viridian's business area nationwide. Defendants developed highly-sophisticated means to indoctrinate well-intentioned IVAs to both sell energy for Viridian to their friends, families and others, and to solicit others to become IVAs. These new IVAs generate sales to their customers and solicit other IVAs, passing up the pyramid various shares of the profits realized at the retail level.

9.      In an attempt to induce people to take part in its pyramid scheme, the Company told prospective IVAs that: "Your Viridian business grows even more as you add Associates to your organization." Glen Crawford, an IVA, said: "I want beach money. You can literally sit on the beach and earn money off the residuals. . . . You're not selling anything." Frank Marone, another IVA, said: "The more Associates you get, the more customers [Viridian gets], the more

_____

[4] During at least the past three years, Viridian has said that it suffers from "computer problems" that have prevented customers from terminating their relationships with the Company or from obtaining refunds due to them due to overcharges. Viridian has also used such excuses in an attempt to more generally explain away customer complaints about rate increases and overcharges.

money you're gonna make. It's direct selling on steroids." As to the pyramid scheme, Robert J. Olrich, a Viridian Vice-President said "It's an absolute no brainer for me."

10.     IVAs lure potential customers to Viridian by promising them low introductory or "teaser" rates and long-term savings.  In fact, once the "teaser" rates expire, the Company's energy rates increase dramatically, causing Viridian customers' bills to rise, often to as much as five to six times the utility rates.

11.     Once Viridian lures a customer into signing up for its energy, it provides the customer with a contract.  This contract states, among other things, that any fluctuations in Viridian's pricing will be based on "market conditions." In reality, however, the fluctuations in Viridian's pricing bear no correlation to changes in market conditions, as is evidenced by the fact that Viridian's rates often are five to six times higher than those of the public utilities. Thus, Viridian regularly breaches its contracts with its customers.

12.     As a consequence of Viridian's unfair and deceptive business practices, Viridian customers across the nation have been cheated out of millions of dollars in exorbitant charges for gas and electricity.

## JURISDICTION AND VENUE

13.     This action has been commenced by Plaintiffs on behalf of themselves and all others similarly situated (*i.e.*, all present and former retail customers of Viridian who purchased natural gas and/or electricity from it).[5]

---

[5] Viridian has customers in at least the states of California, Connecticut, Delaware, Illinois, Indiana, Massachusetts, Maryland, New Jersey, New York, Ohio, Pennsylvania, Virginia, and Washington D.C. and does business through corporate affiliates elsewhere. It is planning to commence selling energy to retail customers in Texas and other states later this year.

14.     This Court has subject matter jurisdiction over this action pursuant to

28 U.S.C. § 1332(a)(1), because Plaintiffs and Defendants are of diverse citizenship and the

aggregate amount in controversy exceeds $75,000, exclusive of interest and costs; and pursuant

to 28. U.S.C. §1332(d)(2), because the Plaintiffs and the vast majority of the members of the

Class are of diverse citizenship from Viridian and the aggregate amount in controversy exceeds

$5,000,000, exclusive of interest and costs.  There are more than 10,000 Class members.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial

part of the events or omissions giving rise to Plaintiffs' claims occurred and was initiated here,

all Defendants have regularly conducted business in this District, and Defendants are each

subject to personal jurisdiction in this District.

## **PARTIES**

16.     Plaintiff Elizabeth Hembling is a citizen of Maryland. In or around July 2013, an

IVA named Tina called Plaintiff Hembling to urge her to sign up for a fixed or variable rate plan

through Viridian. Tina promised Plaintiff Hembling that if she switched from her local utility to

Viridian, her energy bills would be consistently lower. The IVA also informed Plaintiff

Hembling that if she enrolled in a fixed rate plan, at the end of the term, Viridian would notify

her of the expiration and give her an opportunity to re-enroll. The IVA also informed Plaintiff

that if she chose not to re-enroll in the fixed rate plan, her variable rate would consistently be less

than the local utility company's rate. Subsequently, Plaintiff Hembling switched her energy

supplier from Baltimore Gas and Electric ("BGE") to Viridian. She would not have done so but

for the representations of the IVA. After the expiration of Plaintiff Hembling's fixed rate term,

Viridian, without notice, switched her to a variable rate plan.  At that point her energy bill

6

skyrocketed, substantially increasing each month. Viridian's electric rates were 82% higher than BGE's rates in April 2014 and continued to increase to 109% higher by November 2014.

17.     Plaintiff Patricia Kulesa is a citizen of New Jersey. During the relevant period, an IVA solicited Plaintiff Kulesa to switch energy supplier to Viridian. The IVA made the specific and false promise that she would save money each month in her consumption of gas and electricity.  As a result of the IVA's representations, Plaintiff Kulesa signed up for Viridian's variable rate plan. Plaintiff Kulesa did not realize the savings promised by the Viridian IVA.  To the contrary, she paid more for her energy than she would have had she stayed with her previous provider. When she complained to Viridian, Viridian offered Plaintiff Kulesa a refund of $221, which amount was never paid.

18.     Plaintiff Steward Connard is a citizen of Maryland. He owns a residential home in Maryland and a vacation home in Delaware. During the relevant period, an IVA solicited Plaintiff Connard to switch to Viridian for both his homes: for his Maryland home, from Potomac Electric Power Company ("Pepco") to Viridian, and for his Delaware home, from Delmarva Power to Viridian. The IVA made the specific and false promise that Plaintiff Connard would save money each month in his consumption of energy. As a result of the IVA's representations, Plaintiff Connard enrolled in Viridian's variable rate plan for both of his homes. Plaintiff Connard did not realize the savings promised by the Viridian IVA.  On the contrary, he paid more for his energy than he would have had he stayed with his previous providers.

19.     Defendant Viridian Energy, LLC is a Nevada corporation with its principal place of business at 1055 Washington Blvd., Stamford, Connecticut.

20.   Viridian purchases electric power and natural gas and delivers this energy to local utility companies on behalf of Viridian's customers. The Company procures its energy in various wholesale energy markets, including both physical and financial markets and through short-term and long-term contracts. The Company procures its wholesale energy requirements at various utility load zones for electricity and various city gates for natural gas, based on actual and estimated energy usage by its customers and their location.

21.   As a direct result of its dishonest bait and switch and multi-tier pyramid marketing practices, Viridian had a gross profit margin on sales of approximately 30 percent, before deduction of selling expenses.[6]

22.   Viridian utilizes a multi-tiered network of IVAs to sell, on a commission plus bonus basis, energy supplies to consumers.[7] Many IVAs have, in turn, recruited other IVAs and share in a portion of their commissions as well as various bonuses.

23.   Viridian is an indirectly-owned subsidiary of Crius Energy Trust, which conducts business at 1055 Washington Blvd., Stamford, Connecticut.  Crius Energy Trust claims that "it was established to provide investors with a distribution-producing investment through . . . its indirect wholly-owned subsidiaries," such as Viridian. Through its indirect ownership interest in the Viridian entities and through Defendant Fallquist, Crius Energy Trust controls the day-to-day operations of the Company together with Defendant Fallquist.

---

[6] Revenues for the quarter ended June 30, 2014 of the Trust (essentially, those of Viridian) were $134 million and cost of sales were $100.3 million, with a gross profit on sales of $33.7 million.

[7] Through a so-called "partnership" arrangement with Viridian, IVAs cross-sell solar energy products for SunCity.

24.     Crius Energy Trust claims that its subsidiary, Crius Energy, LLC—which, in turn, controls Viridian—"is a comprehensive energy solutions partner that provides electricity, natural gas and solar products to residential and commercial customers. [It] goes to market through an innovative family-of-brands strategy that gives various and targeted customer segments access to a broad suite of energy products and services that make it easier for consumers to make informed decisions that address their energy needs. This multi-channel marketing approach differentiates Crius Energy, LLC in the marketplace, enhances customer retention and positions the Company to achieve long-term growth for investors." It claims that it "currently sells electricity, natural gas, and/or solar energy products and services in at least 19 states and the District of Columbia."[8]

25.     Defendant Michael J. Fallquist is the Chief Executive Officer of Viridian and Crius Energy Trust. Upon information and belief, Defendant Fallquist devised the "bait and switch" scheme described herein. Defendant Fallquist is a resident of Connecticut.

26.     Defendant Robert A. McFadden is a former Senior Vice President of Viridian, who described himself as a "Direct Selling Expert" in the Company's sales materials. Notwithstanding his critical importance to Viridian's revenue-generating operations, he had a "fall-out" with and was fired by Defendant Fallquist. At most times material to this Complaint, Defendant McFadden worked closely with Defendant Fallquist and carried out his instructions in operating Viridian's multi-tiered marketing scheme. He purportedly told the Company's IVAs, who were confronting perpetual back office problems, "[i]f there's a problem, just keep making money." Defendant McFadden is a defendant only with respect to the claims made herein which

---

[8] To generate increased profits for the Trust, Viridian IVAs "cross-sell" solar energy products to many of the same prospects as are sold natural gas and electricity.

arose during his period of employment. Upon information and belief, during the relevant period, Defendant McFadden worked and resided in Connecticut.

## FACTUAL ALLEGATIONS

27.     Until recently, electricity and natural gas were supplied and distributed by local utility companies. Over the last several years, however, a number of states have begun to change the regulations in the energy industry to enhance competition between energy providers.

28.     In theory, the deregulation of energy is supposed to allow consumers to shop around for the best energy rates. However, Crius Energy Trust, through the other Defendants, exploits deregulated markets, by engaging in a misleading and deceptive bait-and-switch sales scheme with potential customers.

29.     Defendants engage and engaged in a multi-level-marketing scheme enticing IVAs to earn money by encouraging family and friends to switch energy providers and by encouraging these new Viridian customers to find additional customers themselves. Defendants' ability to expand in this manner is based in large part on their use of IVAs to spread its fraudulent claims to potential customers.

30.     Through the IVAs, Defendants promise consumers, including Plaintiffs, particularly low introductory rates, and assure them that after the "teaser" period is complete their rates will remain lower than those charged by regulated public utilities. In reality, after the introductory rates, Viridian increases consumers' energy bills dramatically, typically by charging rates significantly higher than the regulated public utilities' rates.

31.     Defendants exploit ambiguities in their representations by creating, through standardized marketing materials and scripts, the expectation of competitive pricing and savings when, in fact, the promise of savings in their energy bills is illusory.

32.     Defendants' standardized representations regarding rates and energy savings are materially misleading to consumers.

33.     Defendants' misrepresentations and omissions caused injury to Plaintiffs and the Class members, who reasonably believed that they would receive energy cost savings on their electric and natural gas bills, when, in actuality, they were actually charged substantially more for their energy supplies when they switched to Viridian. Had Plaintiffs and the Class members known that they would be charged substantially more for their energy supplies by switching to Viridian, they would not have enrolled with Viridian or purchased energy from it.

34.     Plaintiffs and the Class members have sustained economic injury and damages as a result of Defendants' wrongful conduct.

35.     Defendants' misstatements and omissions from sales presentations made through Viridian IVAs caused injury to the Plaintiffs.  Plaintiffs believed, as any reasonably consumer would have under the circumstances, that they would be saving money by switching to Viridian. Plaintiffs would not have enrolled in Viridian but for Defendants' deceptive and unconscionable marketing and business practices. Had Plaintiffs known that the rates they would be charged by Viridian would be substantially higher than their local utility providers, they, as well as all other Class members, would not have made the decision to switch providers and become customers of the Company.

11

36.     Evidencing the impact of Defendants' plan and scheme, numerous Viridian customers from multiple states lodged complaints online, as well as with state attorneys general and other governmental agencies. Consumers regularly complain that they were lured into switching energy suppliers to Viridian with the promise of energy bill savings but, following a low promotional rate, their energy bills skyrocketed, sometimes even multiplying in price from those charged by their previous utility providers. Set forth below is a small sample of customer/IVA complaints made on the Internet and to regulatory agencies regarding Defendants' fraudulent sales and marketing scheme:

   o   *I joined Viridian as a new Associate during a promotional advertisement for customers to also benefit from a 20% discount during their summer months. Eager to take on a new venture with excited anticipation I started to sign up my family and friends. When I received my first bill I noticed that my rates were so much higher than they had ever been. I was confused and shocked and called the company. They told me that during the summer they did not buy enough energy and actually had to go out and buy additional energy at a much higher rate. I could not believe how they misrepresented the fantastic savings when in actuality they were charging me more. My rates then were consistently higher for the next 6 months with this company. This company is supposed to be a wholesale distributer but they actually were charging me month after month higher rates than my retail company Con Edison. I then withdrew my Associate status and apologized to my friends and family. I do not believe that people check their statements as close as I did and I urge people to do so. This company is fraudulent in their practice to dupe Associates to sign up friends under their false advertising. Their claims are simply not so. Consumer be aware!!!![9]*

   o   *I joined Viridian to save money , when I looked at the bill, I see they are charging almost double than the JCP&L base charge ( this month alone I paid $132 more )! When I called [Viridian's] customer service, they are very rude and said we are here to make money not to save money for you. I requested to cancel immediately but they said it will take couple months to make the change. Once you signed up,*

---

[9] http://www.ripoffreport.com/r/viridian-energy/norwalk-connecticut-/viridian-energy-false-advertising-and-rates-higher-than-retail-competitors-norwalk-conne-863611

*you are sure to loose money and it will take few months to get rid of them!! Beware .. don't join these scams.[10]*

- *This is the biggest scam, I have been paying the highest electricity bill I have paid in my whole life, National Grid is at .10 per kilowatt, Viridian is charging me .17 per kilowatt almost double, they suck you in at a low rate, mine was .06 per kilowatt, then without warning they bump it up drastically, I complained and they said they would drop it to .09 per kilowatt but it takes 3 billing cycles to drop, well in the last 3 months I have paid almost $1000 for electricity, before I switched and was with national grid, I was paying $150 per month and that was my highest bill. BIG TIME SCAM Power brokers is all they are with no regard to saving people money, just filling there [sic] pockets.[11]*

- *I had selected Viridian as my energy supplier with a fixed rate of .0749 and evidently it expired after 6 months. They claim to have sent a letter in April advising me of a rate hike but I never received a letter. The rate increased to an incredible .1749 which nearly doubled my electric bill for that month. I have since changed suppliers but it seems I will get a double whammy from Viridian because it takes time to make the switch. They refuse to do anything about it. We need regulation of these energy suppliers. At the very least, their rate hike letters should have to be mailed by registered mail. I would expect some type of credit from them for their negligence of notifying me. I am in the process of trying to get a copy of my original agreement with them.*

- *I was contacted by a sales representative approximately 2 years ago. Viridian was presented as an alternate energy company promising to save me money on my gas and electric rates as compared to my provider *****. I signed a fixed rate contract and at first I did save on my rates at least I believe I did. When the first bill came from ***** it was very difficult to understand so I contacted Viridian. It turns out the way [the Company] told me to read my bill to compare the cost of Viridian to ***** was wrong and made it appear I was saving more than I actually was. In November 2013 I noticed a sharp increase in my gas and electric costs. When I contacted Viridian I was told I was still saving compared to *****. In March I contacted ***** to confirm the way I was reading the bill as my utility costs had skyrocketed since November. At that time I was taught to read the bill correctly. After reviewing my bills since November 2013 through March 2014 I*

---

[10] http://www.city-data.com/forum/new-jersey/2096151-viridian-energy-scam.html

[11] http://www.city-data.com/forum/new-jersey/2096151-viridian-energy-scam-brokers-shops-bill.html#ixzz399adykMq

*could see that I paid close to $1100.00 above what I would have paid ***** for the same service without Viridian as a supplier. I contacted Viridian and they told me that they switched me to a variable rate in November 2013 because my fixed rate contract had expired. Because they never sent me any notification of the change or to give me a chance to cancel. I told them I was outraged at the additional cost of having Viridian as a supplier as I was initially enticed to sign the contract because of the savings over *****'s rates. At that time I canceled my contract and was told it would take 2 additional months to remove Viridian as the supplier. I was told I would be given a refund of the difference in cost from the fixed to variable rate because I was not informed of the change. Viridian sent me a check for 139.00. This amount comes no where near the almost 1300.00 additional cost Viridian charged for my gas and electric supply from November 2013- May 2014. Although they have now changed their marketing their original marketing was deceitful.*

o  *Our Viridian Energy rate has more than doubled since Oct 2013 without any notice or explanation. No letter(s) were received. Customer service was useless, and offered a "new" rate that was higher than ****** normal rate.*

o  *Viridian Energy utilizes a classic bait and switch marketing technique. Their service lowers the electricity bill for roughly 6 months and then increases significantly. It is near impossible to reach a customer service representative to talk about the issue or cancel the service. I still have not talked to a representative and have been number 1 in the telephone queue for well over an hour. Their company is highly disreputable and should suffer financial penalties for their unfair business practices.*

o  *I signed up with Viridian because a friend of mine at the time was selling it in 2010. He assured me I would pay the market rate or below *** our local company. I figured it was similar to the long distance days and felt like why not?? Well I was NEVER told or informed that I was going to pay a variable rate and that can significantly fluctuate. Well they kept the rates low and I never had an issue. I thought if it isn't broke don't fix it. So I was a good customer for three plus years. Until the coldest winter in 10 years hit us in MD and I noticed my Kwh rates had jumped from .10 to .169 in three months!! I never one time got any notice that this was happening. My bill was 600.00 in Feb 2014 and I am VERY conservative on not cranking up the heat. When I contacted the company I was on hold for over an hour then told I was on a variable rate and they were unwilling to do anything to help me. I was offered a fixed rate which is still higher than the market rate *** has and 25.00. I feel this is unfair and unjust practices. It is clearly price gouging. I talked to *** and market rates with no "contract" is .098 so I am being charged almost double that.. It has put a huge financial hardship on*

*my family just to pay this bill. I am requesting that Viridian adjust my bill and give me the market rate of .98 and credit me back accordingly. I am fully capable of paying and want to pay for services used. But not at an inflated rate.*

o  *Just as stated in other complaints - We switched to Viridian a couple years ago to save money from our local \*\*\* supplier. They were supposedly going to be less than our local supplier. For the most part we did save about 10% - 15% up until the last 2 months. We have been in this house for over 20 years, and the most we paid for our electric bill was $385 or so. Our December bill was $548, just got our January bill and it is $613. We noticed that in December they charged us 14.99 cents per kwh, and January was 16.99 cents per. BGE's current rate is 9.99 cents to 10.99 cents.I spoke with a few neighbors who have much larger homes then us, and their utility bills were about $150 - $175 less than ours per month.Needless to say, we have called and canceled our service with Viridian, but I would like other consumers not to get burned by this company. I didn't know that utility suppliers could charge whatever they want to where their rate is more than the local supplier. I know that \*\*\*\*\*\*\*\* already had a case against Viridian for something, but not exactly sure what.*

o  *I signed up with Viridian during the summer because it was supposed to save me money on my electric bill. My rate remained at 0.1034 for September and October and then increased more than $100 every month after. My rate went from 0.1034 in October to 0.1299 for November, 0.1394501 for December and now 0.1478801 for January. I was never made aware that I was signing up for any variable rate or I would have never signed up for it. I know how variable rates work and will never agree to it. I only found out because I contacted \*\*\*\*\*\*\*\* \*\*\*\* to ask them why my bill jumped $100 in one month and they informed me that it is because Viridian has variable rates that are going up every month. This is bad business!!! I want my contract I "signed" and am considering litigation as I feel Viridian robbed me and I was not informed when I signed up for services that my bill was going to skyrocket during the dead of winter. As a result I have paid an additional $370 than what I would have been charged had I just stayed with \*\*\*\*\*\*\*\* \*\*\*\*'s services. What a scam Viridian is!!!!!!!Amended:Your customer service representative told me on January 31, 2014 that I would receive my signed contract within 24-48 hours and to date have not received that. I also wait on hold for well over an hour every time I call and cannot get anyone on the phone. I want this resolved!!!!*

o  *Viridian Energy is an alternate energy provider in PA where I live.In December Viridian EXCESSIVELY increased their rate from the approximate .09 per KWH to almost .15 per KWH! Even though I understand I was on "variable rate" contract, that kind of an increase is GOUGING the consumer at a time of the year when our energy costs are the highest!As far as I can determine, the PUC (Public Utility Commission) does not regulate the "cap" this company can charge. I feel*

15

*THAT needs to be fixed too! In closing, buyer-beware, think twice before contracting with Viridian.*

o   *I just received another electricity bill that is extremely outrageous. After called ComEd I realized the reason that my bill is so high is because of the supplier, Viridian Energy. I went back to all of my bills in the last year and since July of 2013 they have increased their rate every single month. For this month they are charging 15.99 cents per kWh. That is up 3 cents from last month. ComEd's pricing is 5.5 cents. I have tried calling this company and cannot get anyone on the phone. I have waited up to an hour and a half. I have been told by ComEd that I need to contact Viridian to cancel their services but how can I cancel their services when no one answers the phone or emails. I feel I am out of options on what to do. I cannot afford these outrageous electricity bills of $450+ dollars per month and I don't even have electric heat.*

o   *I signed up for Viridian Energy to save money on my electric bill. I have been slowly scammed by this company. They will not issue credit. My bill is $759.00 this month and I cancelled with them last month. They tell me it takes 1-2 months for them to let PSEG know I have cancelled. I called PSEG immediately with my cancellation number but I was told there is nothing they can do until the cancellation comes to them from Viridian. They lie to you and tell you you will save money then when you call to inquire about your bill a supervisor is not avaialble, they do not issue credits, they say "sorry you should have been told when you signed up you are on a variable rate not a fixed rate or you would have saved money". I am a single mother I cannot afford a $759.00 PSEG a month.I noticed in December our bill was $450 which was more than last December which I had Christmas lights up all through the inside and all over the outside of the house I baked every weekend. This year our tree went up the weekend before Christmas we had it lite for 5 days maybe and I baked for one weekend. January the bill was $600. I called PSEG they said they charges are from Viridian. I called Viridian and was told we were signed up on a variable rate and should have been told that. I was told they cannot issue credits I told them to cancel immediately. They told me it takes 1-2 months to roll over to PSEG so they can continue to rip me off for the rest of the winter. I just received this months bill $759.00. This is crazy and they need to be stopped. If you can help in anyway I would greatly appreciate it. Thank you*

o   *Viridian Energy was sold to me as an energy provider that would cost me less than my local utility company. I watched the bill for the first few months and everything seemed ok. In the past two months my bill has shot up more than it did last winter so I finally opened my online account with National Grid to see what the energy use level and rate was. Turns out since September my electricity rate has increased from 7.5 Cents per KW hour to 14.5 Cents per KW hour. Nearly a 100% increase in cost without warning or notice. Also- I called National Grid*

16

*and they said that they were currently charging 10 Cents per KW hour.... I calculated the amount of over charge by using 4.5 cents (the difference between Viridian's price and NGrids) and multiplied it by 4008 KW hours and came up with a $180.00 over charge for this month alone... Since September Viridian has overcharged me $450.*

o *I switched to Viridian's Adjustable Rate program instead of ***** with the belief that the rates would be comparable to possibly lower that the rates that I currently had. I was told that the rate would fluctuate, but be similar to less than what I would have paid if it were comed. I recently looked at my bill because it seemed high and compared it to a neighbor's bill. My energy cost was almost 3x as high as my next door neighbor. I was paying .1299 kWh and he was paying .0559 kWh. I then compared my past 7 months to what the State of Illinois publishes. My rates were:.083, .086, .089, .0995, .1099, .1144 and finally .1299 in December. This compares to s stagnant rate of .055 on the Illinois site. I called Viridian to explain why my energy rate was doubling while other rates were stagnant. The individual I spoke to could not give me an answer and said that variable rates change each month. I said that I understood that, but where do they get the number. They can be charging me anything. The gentleman had no answer and said his managers tell him the number. I asked for a manager. None was available, so he said one will call me back within 24 hours. I never received a call back. I have called again and no manager will speak to me. This company signs people up and then jacks the rate up without any checks or balances. They cannot offer me an explanation of why the rate was so high. Their site shows that I can lock in right now for .0719 for the next 6 months or .0569 for 50% "green" energy. How is my rate 80% above the fixed rate? Also, energy prices tend to fall in the winter months. Why has mine increased 75%? No one can answer the question and I do not get call backs. This company scams and takes advantage of people.[12]*

37.      These complaints reflect the false and misleading course of conduct that Defendants are or were engaged in, resulting in damages to consumers across the nation.

38.      After Viridian lures customers into signing up for its energy with false promises of savings, it provides them with contracts that Viridian consistently fails to honor.  The contracts state, among other things, that any fluctuations in the price of Viridian's variable rate energy will be based "market conditions."  In reality, however, the fluctuations in Viridian's pricing bear no

---

[12] http://www.bbb.org/connecticut/Business-Reviews/electric-companies/viridian-energy-llc-in-stamford-ct-87068321/complaints

correlation to changes in market conditions, as is evidenced by the fact that Viridian's rates often are five to six times higher than those of the public utilities.

39.     Government action has already been taken against Viridian in connection with the wrongful conduct described herein. On June 7, 2012, the Maryland Public Service Commission imposed a civil penalty of $60,000 against Viridian related to its false advertising and marketing practices. Under Order 84959, the Commission found that Viridian violated Public Utilities Article § 7-507 and Code of Maryland Regulation 20.53.07.07 and 20.53.07.08 by engaging in false, misleading, and deceptive advertising and solicitations related to the savings the consumer would realize, as well as their relationship with utility companies.[13]  Upon information and belief, substantially similar investigations are underway in New Jersey and in several other states. Notwithstanding such investigations and litigation by customers, Viridian keeps expanding its operations.

## CLASS ACTION ALLEGATIONS

40.     Plaintiffs bring this suit as a class action on behalf of themselves and all others similarly situated Viridian customers (the "Class") pursuant to Fed. R. Civ. P. 23. Plaintiffs seek to represent the following Class and Sub-Class:

a.     All persons who are or have been Viridian customers in Arizona, California, Connecticut, Delaware, Hawaii, Illinois, Indiana, Massachusetts, Maryland, New Jersey, New York, Ohio, Oregon, Pennsylvania and Virginia, as well as within Washington D.C. Excluded from the Class are any Judge or Magistrate presiding over this or any related action and members of their families; all persons who properly execute and file a timely request for exclusion from the Class ("the Class"); and

---

[13] *See* Public Service Commission of Maryland Order No. 84959.

b.     All persons who are or have been customers of Viridian in Maryland ("the Maryland Sub-Class").

41.     Defendants actively promoted sales on a national basis despite the fact that Viridian conducted business in many states. Regional differences in Viridian's marketing were relatively few and immaterial. For example, "teams" of super-salesmen such as Viridian's Team V, composed of IVAs Jim Kenny, Ed Kenny, Brenden Kenny and Michael FitzPatrick, operated in multiple states.[14] They and each other group and IVA in Viridian's pyramid marketing structure used direct selling materials to assure standardized and essentially uniform sales presentations were and are made to prospective customers.

42.     Such uniformity was and is brought about through the so-called "Viridian University," through which the Company supplies literature to IVAs, such as the brochure "An Opportunity With Purpose," and shows IVAs videos to stimulate them to recruit other IVAs and assure uniformity of retail sales presentations. Viridian creates websites for IVAs and provides them with ongoing selling "tips."  In addition, the Company holds retreats and other sessions to motivate its IVAs to sell energy at retail, to recruit other IVAs, and to assure uniformity of marketing of energy sold by Viridian.

43.     Plaintiffs reserve the right to modify the definition of the Class and/or the Sub-Class upon completion of discovery addressed to Class certification.

---

[14] On July 31, 2014, the members of Team V boasted about the spread of their network of IVAs working under them: "Ed….actively supports the surrounding Virginia and DC regions, Jim and Mike have a strong hand in New Jersey, New York and Illinois, and Brenden hones in on Massachusetts. We have coverage for our entire team in all of our markets—all within a two or three-hour drive—but we also knew that we could make this business even bigger to support a national market..…Right now, for example, we're working closely in Illinois, Ohio and California."

44.     The exact number of Class members is unknown as such information is in the exclusive control of Viridian. Plaintiffs, however, believe that the Class and Sub-Class each encompass thousands of individuals dispersed throughout Maryland, New Jersey, Delaware, and the nation.  Therefore, the number of persons who are members of the Class described above are so numerous that joinder of all members in one action is impracticable.

45.     Questions of law and fact that are common to the entire Class predominate over individual questions because the actions of Defendants complained of herein were generally applicable to the entire Class.

46.     These legal and factual questions include, but are not limited to:

   a.   The nature, scope and operations of Defendants' wrongful practices;

   b.   Whether Defendants engaged in fraudulent practices as to Class members;

   c.   Whether Defendants' conduct amounts to a violation of the Maryland Consumer Protection Act and similar laws in the states where Viridian does business;

   d.   Whether Viridian breached its contracts with the members of the Class;

   e.   Whether Viridian breached the covenant of good faith and fair dealing with Class members;

   f.   Whether Defendants negligently misrepresented the true nature of their energy rates;

   g.   Whether Defendants have been unjustly enriched; and

h.  Whether Plaintiffs and the Class suffered damages as a result of Defendants' misconduct as described herein and, if so, the proper measure of damages.

47.  Plaintiffs' claims are typical of those of other Class members because Plaintiffs and all Class members were injured by the same wrongful practices of Defendants as described in this Complaint.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of all Class members, and are based on the same legal theories.

48.  Questions of law or fact common to Class members predominate and a class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by Class members are likely to be in the millions of dollars, the individual damages incurred by each Class member resulting from Defendants' wrongful conduct are, as a general matter, too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting separate individual claims is remote and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials on the same factual issues.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action and certification of the Class under Rule 23(b)(3) is proper.

49. Plaintiffs have no interests that are contrary to or in conflict with those of the Class they seek to represent.

50. Viridian has acted or refused to act on grounds generally applicable to all members of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with regard to Class members as a whole and certification of the Class under Rule 23(b)(2) proper.

## COUNT I
## BREACH OF CONTRACT/COVENANT OF GOOD FAITH AND FAIR DEALING
### *(On behalf of the Class)*

51. Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

52. Viridian is the sole Defendant to this Count.

53. Plaintiffs and all members of the Class entered into contracts with Viridian, pursuant to which it was to charge them for energy supplied. Implicit in such contracts was Viridian's duty to act in good faith vis-à-vis its customers and treat them fairly.

54. At all times relevant, Viridian had total control of the energy bills that were provided to its customers and determined unilaterally the prices for energy that would be charged to consumers.

55. Notwithstanding its duty of good faith and fair dealing with respect to its dealings with consumers, including Plaintiffs and the Class members, Viridian unilaterally charged them excessive prices that were not imposed in good faith or fairly.

56.     Furthermore, while Viridian agreed to set its rates to "market conditions," it, in fact, set its rates based solely on what the market could bear, as is evidenced by Viridian's rates dramatically increasing even as public utility rates decreased.

57.     Viridian breached its contractual obligations by failing to set rates in response to "market conditions."

58.     In so doing, Viridian acted recklessly, maliciously, in bad faith, unfairly and without good cause, thereby preventing Plaintiffs and the Class members from receiving their reasonably expected benefits under the terms that were promised to them.

59.     As a direct and proximate result of Viridian's deceptive, fraudulent, and unfair practices as referred to herein, Plaintiffs and Class members have suffered damages in an amount to be determined at trial.

60.     Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Viridian for damages and declaratory relief.

### COUNT II
### COMMON LAW FRAUD, INCLUDING FRAUDULENT INDUCEMENT, AND FRAUDULENT CONCEALMENT
#### *(On behalf of the Maryland Sub-Class)*

61.     Plaintiff Hembling re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

62.     All Defendants, through IVAs, made or caused to be made false and fraudulent representations of material facts to Plaintiff Hembling and the Maryland Sub-Class members regarding Viridian's purported cost savings benefits of switching energy providers from their regulated public utilities to Viridian, and concealed material facts from the Plaintiffs and Class members, including, *inter alia*, that Viridian was engaging in a "bait and switch" scheme

23

pursuant to which Plaintiff Hembling and the Maryland Sub-Class members would not obtain the promised benefits of purchasing energy supplies from Viridian as set forth above.

63.     At the time Defendants made or caused to be made these misrepresentations and concealed material facts integral to Viridian's "bait and switch" scheme, Plaintiff Hembling and the Maryland Sub-Class members were unaware of the falsity of these representations, and reasonably believed them to be true and had no knowledge of the material facts that Defendants did not disclose.

64.     In making these representations or causing them to be made or failing to disclose material facts, Defendants knew they were false and intended that Plaintiff Hembling and the Maryland Sub-Class members would rely upon such misrepresentations and failures to disclose material facts.

65.     Plaintiff Hembling and the Maryland Sub-Class members did, in fact, rely upon such misrepresentations and/or Defendants failure to disclose all material facts and, as a consequence, became customers of the Company. Such reliance was reasonable, as Plaintiff Hembling and the Maryland Sub-Class members had no reason to believe that Defendants would not act honestly and in good faith.

66.     As a direct and proximate result of Defendants' deceptive, fraudulent, and unfair practices, Plaintiff Hembling and the Maryland Sub-Class members have suffered damages in an amount to be determined at trial.

67.     Plaintiff Hembling, on behalf of herself and all others similarly situated, demands judgment against Defendants for damages and declaratory relief.

## COUNT III
## NEGLIGENT MISREPRESENTATION
### *(On behalf of the Class)*

68.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

69.     Under the circumstances alleged herein, Defendants owed a duty to Plaintiffs and the Class to provide them with accurate information regarding, *inter alia*, the true nature of Viridian's energy rates and lack of energy cost savings.

70.     Defendants, directly or through IVAs, represented to Plaintiffs and Class members that by switching energy suppliers to Viridian, they would enjoy savings with competitive market rates.

71.     Defendants' representations were false, negligent and material.

72.     Defendants negligently made these false misrepresentations with the understanding that Plaintiffs and Class members would rely upon them.

73.     Plaintiffs and Class members did, in fact, reasonably rely upon these misrepresentations and concealments of material facts by Defendants.

74.     As a direct and proximate result of Defendants' negligent actions, Plaintiffs and Class members have suffered damages in an amount to be determined at trial.

75.     Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants for damages and declaratory relief.

25

## COUNT IV
## UNJUST ENRICHMENT
### *(On behalf of the Class)*

76.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

77.     Plaintiffs and the Class have unintentionally conferred substantial benefits on Defendants by switching to Viridian as their energy suppliers, and Defendants have consciously and willingly accepted and enjoyed these benefits and invested them.

78.     Defendants knew or should have known that the payments to Viridian were given and received with the expectation that Plaintiffs and the Class would be saving money on their energy bills, as represented by Defendants.

79.     Because of the wrongful activities described above, Defendants have been unjustly enriched by their wrongful receipt of Plaintiffs and Class members' monies through corporate revenues, salaries and other financial benefits.

80.     Defendants, having retained the monies which unjustly enriched them, should be required by the Court to account to Plaintiffs and the Class for their unjust enrichment and the profits earned thereafter from investing such monies.

81.     As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and Class members have suffered damages in an amount to be determined at trial.

82.     Defendants should be required to disgorge all monies, profits and gains which they have obtained or will unjustly obtain in the future at the expense of Plaintiffs and the Class members.

**COUNT V**
**VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT**
*(On behalf of the Maryland Sub-Class)*

83.     Plaintiff Hembling re-alleges and incorporates by reference the allegations

contained in all preceding paragraphs as though set forth fully herein.

84.     Plaintiff Hembling asserts this cause of action on behalf of herself and the other

Maryland Sub-Class members.

85.     This cause of action is brought pursuant to Maryland's Consumer Protection Act,

Md. Code, Com. Law § 13-101, *et seq.* ("the MCPA").

86.     The MCPA declares unlawful deceptive and unfair trade practices, such as:

making false or misleading statements and other representations that have the capacity, tendency,

or effect of deceiving or misleading consumers; failing to state material facts where the failure

deceives or tends to deceive consumers; and engaging in deception, misrepresentation, or

knowing concealment, suppression, or omission of material facts with the intent that consumers

rely on the same in connection with the promotion and sale of consumer goods or services.

87.     Under the MCPA, Defendants' misleading representations regarding energy cost

savings and competitive market rates are unfair, deceptive and unconscionable.

88.     In the course of soliciting and promoting Viridian's purported energy cost savings

and competitive market rates to consumers and in entering into agreements with consumers to

provide such purported services, Defendants have engaged in unfair and deceptive acts and

practices in trade or commerce, in violation of Md. Code, Com. Law § 13-101.

89.     Defendants violated the MCPA by engaging in a fraudulent and deceptive bait and

switch sales model pursuant to which the IVAs, as trained by Defendants, induced customers to

switch from their regulated energy suppliers to Viridian with promises of low promotional or "teaser" rates and longer-term energy savings, and then charging the consumer exorbitant non-competitive energy rates following the fixed rate term and/or promotional period.

90.     Defendants violated the MCPA and other similarly situated laws by falsely representing to consumers that if a consumer was removed from a fixed rate term, their variable rate would still be lower than their local utility's rate.

91.     Defendants violated the MCPA and other similarly situated laws by falsely representing that consumers would save money on their energy bills by switching from regulated providers to Viridian.

92.     Defendants violated the MCPA by failing to disclose that, on a consistent basis, Viridian's regular rates are substantially higher than its competitors and not competitive in the market and by failing to disclose to consumers that after the initial promotional period, energy rates were almost guaranteed to increase substantially.

93.     Defendants violated the MCPA by failing to adequately inform consumers that Viridian's energy rates generally increase and will rarely ever be lower than the competitive market price and by representing to consumers that the Company could save consumers money on their energy bills, when, in fact, consumers are more likely to obtain better rates and energy savings with their local regulated public utility companies.

94.     Defendants' acts and practices as alleged in the foregoing paragraphs were false, misleading, deceptive, and unfair to consumers, in violation of the MCPA and other applicable consumer protection laws.

95.     Plaintiff Hembling and the Maryland Sub-Class members relied on Defendants'

misrepresentations delivered through IVAs. Had Defendants disclosed to the Class members, in

Viridian's marketing and sales promotional materials or otherwise, that their energy bills would

increase with Viridian, Plaintiff Hembling and the Maryland Sub-Class members would not have

switched from their regulated energy providers to Viridian for their energy supplies.

96.     As a direct and proximate result of Defendants' deceptive, fraudulent, and unfair

practices, Plaintiff Hembling and the Maryland Sub-Class members have suffered injury in fact

and/or actual damages in an amount to be determined at trial.

97.     Plaintiff Hembling, on behalf of herself and all others similarly situated, demands

judgment against Defendant for damages and declaratory relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for

a judgment to be entered upon Defendants as follows:

    A.  Appointing Plaintiffs as the representatives of the Class and respective Sub-

        Classes and their counsel as Class counsel;

    B.  For economic and compensatory damages on behalf of Plaintiffs and all Class

        members;

    C.  For actual damages sustained;

    D.  For treble damages pursuant to law, and all other actual, general, special,

        incidental, statutory, punitive, and consequential damages to which Plaintiffs and

        Class members are entitled;

E.  For injunctive relief, compelling Defendant to cease their unlawful actions and to account to Plaintiffs for their unjust enrichment;

F.  For reasonable attorneys' fees, reimbursement of all costs for the prosecution of this action, and pre-judgment and post-judgment interest; and

G.  For such other and further relief this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all issues within the instant action so triable.

Dated: August 21, 2015          Respectfully submitted,


By /s/Laurie Rubinow
Laurie Rubinow (ct27243)
James E. Miller (ct21560)
Shepherd, Finkelman, Miller & Shah, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
lrubinow@sfmslaw.com
jmiller@sfmslaw.com

Charles J. LaDuca
Beatrice Yakubu
Cuneo Gilbert & LaDuca, LLP
8120 Woodmont Avenue, Suite 810
Bethesda, MD  20814
Telephone:  (202) 789-3960
byakubu@cuneolaw.com

Richard D. Greenfield
Marguerite R. Goodman, Esq.
Greenfield & Goodman, LLC
250 Hudson Street-8th Floor
New York, NY 10013
Telephone: (917) 495-4446
whitehatrdg@earthlink.net

Taylor Asen
Cuneo Gilbert & LaDuca, LLP
16 Court Street, Suite 1012
Brooklyn, NY 11241
Telephone: (202) 789-3960
tasen@cuneolaw.com

*Counsel for Plaintiffs*